**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMARCUS FENNELL,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-669** |
| | : | |
| **JAMES C. KOSTURA,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                             **June 25, 2019**

Persons in prison must adjust to the prison officials need to secure the safety of all staff and prisoners. These efforts include lockdowns and restrictions upon prisoners housed in a maximum security unit when the prison officials find shanks in the common area of the unit. The prison officials' responses to finding these weapons must comply with the prisoners' constitutional rights while balancing the prison's security needs. When, as today, a prisoner in the maximum security unit cannot allege specific constitutional harm arising from the prison officials' responses to finding shanks in the common area of the maximum security unit, we grant the prison officials' and prison's motion to dismiss with leave for the prisoner to attempt to file claims recognized under the Law with sufficient fact detail as to each named defendant (other than the prison which is not a person able to be sued under the civil rights laws) so as to allow our careful review of his claims.

## I.     Allegations.

Pretrial detainee Jamarcus Fennell sues several correctional officers and Northampton County Prison for allegedly violating his civil rights while housed on the Prison's maximum-security unit in January and February of this year.

Early in the morning on January 29, 2019, Lieutenant Luis Cruz, Lieutenant Rachel Henninger, and Lieutenant Ashley Warning woke inmates of the J-Tier Maximum Security Unit ("J-Tier") at Northampton County Prison and told the inmates to leave their cells because of a fire drill.[1] Unnamed officers ushered the inmates into the prison's gymnasium, where officers strip searched them.[2] At the same time, additional unnamed officers looked through the inmates' cells and confiscated various belongings, such as towels, mail, blankets and other items.[3] As inmates returned to the maximum security unit, Correctional Officer Charles Baker yelled at the men "Lock in your f**king cells assholes. You're lucky I don't send your f**king asses to the Hole."[4] Lieutenant Cruz then told the inmates they would be locked in their cells for seventy-two hours because the officer found "shanks" in the unit's common area.[5] When inmates asked why the entire unit had to be punished, and not simply those who had the "shanks," Lieutenant Cruz said "Because they were found in the common areas."[6]

Mr. Fennell, along with the other inmates of the J-Tier Unit, spent the next seventy-two hours locked in their cells.[7] On February 1, 2019, Correctional Officer Luis Santiago allowed half the inmates of the J-Tier Unit back out of their cells, but with limited privileges.[8] Officer Santiago yelled "You all know it's your fault for the punishment you're getting. You had shanks."[9] The inmates could leave their cells for three hours a day, but had no access to religious services or educational programs.[10] Unnamed officers removed the televisions and fans from the common area, and deactivated the law library computers.[11] Officials reactivated the computers at an unspecified later time.[12] Inmates took cold showers with mold on the tiles, while wearing the same rubber shoes they wore during the day.[13] Inmates also had their access to commissary delayed.[14] These conditions continued for seven days.[15] When Mr. Fennell asked when the religious and

vocational programs would return, Lieutenant Justin Hoffman told inmates the services would not return because of their classification as maximum security inmates.[16]

On February 4, 2019, Mr. Fennell asked Lieutenant Henninger questions about who made the decision to implement a lockdown, and who the owned the shanks.[17] Lieutenant Henninger answered "Guidi" is responsible for determining the lockdown status of the unit.[18] Mr. Fennell asked who "Guidi" is, but Lieutenant Henninger replied "I will not release that information."[19]

The next day, Captain David Collins came to the J-Tier Unit yelling "Who in the hell wanted to speak. I'm here now to talk shit if you want . . . Ya'll gonna get act right or some ass whooping's until ya'll act right . . . What do you want? What's your name sir? That's not an issue… who's next?"[20] Jamarcus Fennell told Captain Collins he displayed inappropriate behavior, but Captain Collins responded "If you ask me another question, Imma send your little smart ass to E-Tier."[21] "E-Tier" is also known as "The Hole" or solitary confinement.[22] When another inmate showed Captain Collins mail regarding the issues inmates tried to grieve, Captain Collins replied "I don't give a f**k about your mail, it's not grievable. Keep writing letters, you'll never get off lockdown. And go ahead and try and sue. Security overrides the law. I am the law."[23]

Later the same day, Lieutenant Chad Rinker told Mr. Fennell he is no longer allowed to use the law library during recreation periods.[24] Lieutenant Rinker said to Mr. Fennell "You heard what Collins said to you, you're locked down."[25] Mr. Fennell could only access the law library during his daily three hours out of his cell. [26] Before leaving, Lieutenant Rinker said "Oh yea and it isn't grievable so don't ask."[27]

On February 6, 2019, Lieutenant Hoffman told Mr. Fennell:[28]

"The jail has received numerous letters and request slips about your opinions on the status of this unit and we all gave you the exact same answer. It is not grievable and this is your direct order to stop asking about this issue or you will receive a write up for harassment and be sent to the Hole."[29]

Lieutenant Hoffman then advised Mr. Fennell never to grieve the lockdown again.[30]

## II.    Analysis.

Mr. Fennell now sues the Northampton County Prison for violating his First Amendment rights by denying maximum security inmates the ability to freely exercise their religion, and for denying inmates access to the courts. He sues Lieutenant Warning, Lieutenant Henninger, and Lieutenant Cruz for violating his Fourth Amendment right to be free from unreasonable searches by searching his cell.   He sues Northampton County Prison, Lieutenant Rinker and Officer Santiago for violating his Fifth Amendment and Fourteenth Amendment rights to due process by confining him to his cell for seventy-two hours without a misconduct hearing. He sues Northampton County Prison, Captain Collins, Lieutenant Rinker, and Officer Santiago for violating his Fourteenth Amendment right of equal protection by punishing the J-Tier Unit differently than other units, and for denying access to the same educational and religious programs as other units in the prison. He sues Northampton County Prison for violating his Eighth Amendment rights by removing the fans from the J-Tier Unit, forcing inmates to take cold showers, and denying access to religious and vocational programs. He sues Captain Collins and Officer Baker for violating his Eighth Amendment rights by verbally harassing and threatening him. He sues Captain Collins for violating his Ninth Amendment right by making disparaging comments. He sues Captain Collins for violating his Thirteenth Amendment right to be free from involuntary servitude by telling Mr. Fennell to stop asking questions.   He sues Captain Collins, Lieutenant Hoffman, Lieutenant Rinker, and Officer Santiago for retaliating against him. He sues Captain Collins, Lieutenant Chlewbowski, Lieutenant Warning, Lieutenant Rinker, Lieutenant Hoffman, and Officer Santiago for conspiring to violate his civil rights. He sues Deputy Warden Guidi,

Director Kostura, and Captain Collins under 42 U.S.C. § 1986 for failing to prevent violations of his civil rights.

Northampton County Prison, Director of Corrections James Kostura, Deputy Warden Janel Giudi, Captain David Collins, Lieutenant Ashley Warning, Lieutenant Luis Cruz, Lieutenant Chad Rinker, Lieutenant Michael Chlebowski, Lieutenant Justin Hoffman, Lieutenant Rachel Henninger, Correctional Officer Charles Baker, and Correctional Officer Luis Santiago move to dismiss Mr. Fennell's Complaint arguing he fails to state a claim against them.[31]

Mr. Fennell sues the prison employees in both their official and individual capacities under 42 U.S.C. § 1983. To state a claim under § 1983, Mr. Fennell must allege the Defendants, acting under color of law, violated his constitutional or statutory rights, and caused the alleged injury.[32] To state a § 1983 claim against an individual, Mr. Fennell must allege the individual's "personal involvement" in the constitutional violation.[33] Liability against an individual defendant "cannot be predicated solely on the theory of respondeat superior."[34] Mr. Fennell may show Defendants' personal involvement through allegations of "personal direction or of actual knowledge and acquiescence."[35]

We analyze the claims against Northampton County Prison and the claims against the state actors in their official capacities together as claims against Northampton County.[36] By suing state actors in their official capacities, Mr. Fennell sues Northampton County alleging municipal liability.[37] To hold a municipality liable under *Monell*, Mr. Fennell must allege "(1) [he] possessed a constitutional right of which [he] was deprived; (2) the municipality had a policy [or custom]; (3) the policy [or custom] 'amount[ed] to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy [or custom] was the 'motivating force behind the constitutional violation.'"[38] A policy exists when a "'decision-maker possessing final authority to establish

municipal policy with respect to the action' issue[d] an official proclamation, policy or edict."[39] A custom exists when "such practices of state officials . . . [are] so permanent and well-settled as to constitute a custom or usage with the force of law."[40]

### A. We dismiss Mr. Fennell's First Amendment claim for depriving access to the court against Northampton County Prison.[41]

Mr. Fennell alleges Northampton County Prison violated his First Amendment right to access the courts by temporarily restricting access to the law library and temporarily deactivating the computers.[42]

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."[43] This right ensures inmates can bring contemplated challenges to sentences or conditions of confinement before the court.[44] To state a claim for denial of access to the courts, Mr. Fennell "must allege (1) he has lost the chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) he has no other remedy which could be awarded as recompense for the lost claim other than in the present denial of access suit."[45]

Mr. Fennell fails to identify an underlying claim. Mr. Fennell does not allege Northampton County Prison officials prevented him from appealing his sentence or challenging the conditions of his confinement.[46] Without alleging a lost opportunity to pursue an arguable underlying claim, Mr. Fennell fails to show an injury capable of being remedied.

Mr. Fennell fails to state a claim for depriving him access to the courts. We dismiss Mr. Fennell's First Amendment claim against Northampton County Prison with prejudice.

**B. We dismiss Mr. Fennell's First Amendment free exercise claim against Northampton County Prison.**

Mr. Fennell alleges Northampton County Prison violated his First Amendment right of religious practice by not providing maximum security inmates the opportunity to attend religious services. [47] Northampton County Prison argues Mr. Fennell fails to state a claim.[48]

Inmates have a First Amendment right to practice religion while incarcerated.[49] "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to a legitimate penological interest."[50] "The facts asserted in a complaint must show that a prisoner's request for religious services is based on his own sincerely held religious belief."[51]

In *Santana*, a pretrial detainee filed a complaint alleging an illegal lockdown for 270 days, depriving him the opportunity to attend religious programs, and subjecting him to punishing conditions.[52] The inmate alleged officials "denied [him] the right to practice religious freedoms to attend church service."[53] The court dismissed the claim because the inmate did not assert what religious beliefs he held, or how defendants interfered with his exercise of his religious beliefs.[54]

Mr. Fennell alleges the Northampton County Prison violated his First Amendment right by "not providing any opportunity to allow inmates religious services."[55] On February 1, 2019, Lieutenant Hoffman told Mr. Fennell the religious services would not return due to their security classification.[56]

Like *Santana*, Mr. Fennell cannot state a claim by merely concluding Northampton County failed to provide inmates access to religious services.[57] Mr. Fennell fails to allege a defendant interfered with his ability to exercise sincerely held religious beliefs. Nor does he allege a policy, custom, or recurring practice interfering with an alleged attempt to exercise his religion.

Mr. Fennell fails to state a free exercise claim. We dismiss Mr. Fennell's First Amendment claim with prejudice.

### C. We dismiss Mr. Fennell's Fourth Amendment claim against Lieutenants Warning, Henninger, and Cruz.

Mr. Fennell alleges Lieutenants Warning, Henninger, and Cruz violated his Fourth Amendment right by searching his cell on January 29, 2019, in response to finding contraband in the common area.[58]

The Fourth Amendment establishes "[t]he right of the people to be secure . . . against unreasonable searches and seizures[.]"[59] A search is unreasonable if the person has a "reasonable expectation of privacy" in the space to be searched.[60] An inmate does not have a "reasonable expectation of privacy" within their prison cell.[61]

Mr. Fennell's claim fails because he does not have a reasonable expectation of privacy in his prison cell. Mr. Fennell alleges officers conducted the search in response to the discovery of shanks/weapons in the unit's common area. Lieutenants Cruz, Henninger, and Warning merely searched Mr. Fennell's cell in response to a security concern. Since Mr. Fennell does not have a reasonable expectation of privacy in his cell, he cannot state a claim under the Fourth Amendment.

Mr. Fennell fails to state a claim for an unreasonable search. We dismiss Mr. Fennell's Fourth Amendment claims against Lieutenants Warning, Henninger, and Cruz with leave to amend his complaint to adequately state a claim if he can do so under Federal Rule of Civil Procedure 11.

### D. We dismiss Mr. Fennell's Fifth Amendment and Fourteenth Amendment due process claim against Northampton County Prison, Lieutenant Rinker, and Officer Santiago.

Mr. Fennell alleges Northampton County Prison, Lieutenant Rinker, and Officer Santiago violated his Fifth Amendment and Fourteenth Amendment right to due process by locking the

inmates in their cells for seventy-two hours without a misconduct hearing, and revoking privileges.[62]

Under the Fourteenth Amendment, "an inmate cannot be deprived of life, liberty, or property without due process of law."[63] However, the right is only triggered where the deprivation "imposes an atypical and significant hardship on the inmate in relation to the ordinary incident of prison life."[64]

In *Henderson*, our Court of Appeals affirmed the district court's dismissal of a prisoner's due process claim alleging a defective misconduct hearing, explaining ninety days of solitary confinement does not impose an "atypical and significant hardship" sufficient to trigger the Fourteenth Amendment guarantee of due process before a deprivation of the prisoner's liberty interest.[65]

Mr. Fennell alleges Lieutenant Rinker and Officer Santiago failed to provide inmates with misconduct hearings before revoking privileges and locking inmates in their cells for seventy-two hours.[66]

In contrast to ninety days of solitary confinement, a seventy-two-hour period confined to his cell did not subject Mr. Fennell to a "significant hardship" to state a claim.

Mr. Fennell also fails to allege a state actor's personal involvement in depriving him of due process. Mr. Fennell does not allege either state actor had personal involvement in making the decision to revoke privileges, or in administering misconduct hearings.[67] Lieutenant Henninger allegedly said Deputy Warden Guidi—not Lieutenant Rinker and Officer Santiago—decided to lock down the unit.[68]

Mr. Fennell also fails to state a claim against Northampton County Prison because he does not allege facts showing the policy, custom, or recurring practice of punishing inmates or revoking privileges without misconduct hearings.[69]

Mr. Fennell fails to state a claim for depriving him of due process. We dismiss Mr. Fennell's Fifth Amendment and Fourteenth Amendment due process claims against Lieutenant Rinker and Officer Santiago with leave to amend to adequately state a claim. We dismiss claims against Northampton County Prison with prejudice.

### E. We dismiss Mr. Fennell's Fourteenth Amendment equal protection claims against Northampton County Prison, Captain Collins, Lieutenant Rinker, and Officer Santiago.

Mr. Fennell alleges Northampton County Prison violated his Fourteenth Amendment right to equal protection by punishing inmates of the maximum security unit differently than the other units of the Prison, and by not allowing inmates access to the same religious and educational programs.[70] Mr. Fennell also alleges Captain Collins, Lieutenant Rinker, and Officer Santiago violated his equal protection right by "not allowing Max Unit inmates to be treated [as] fairly as all other units in Northampton County [Prison]."[71] Defendants argue Mr. Fennell fails to state a claim because he does not allege different treatment from other similarly situated inmates.[72]

Under the Fourteenth Amendment, no state shall "deny to any person . . . the equal protection of the laws."[73] To state a claim under the Equal Protection Clause, Mr. Fennell must "allege he was intentionally treated differently from others similarly situated."[74]

Mr. Fennell does not allege he is similarly situated to other inmates at Northampton County Prison not housed within the J-Tier Maximum Security Unit. He does not allege other maximum-security inmates receive the benefits unavailable to him. In fact, he alleges differently classified inmates receive different treatment.[75]

Mr. Fennell also does not allege facts showing the personal involvement of Captain Collins, Lieutenant Rinker, and Officer Santiago in discriminatory treatment. Mr. Fennell does not allege how these Defendants treat other inmates differently, even assuming they are similarly situated. It is unclear what treatment Mr. Fennell is referring to when he says "not allowing Max Unit inmates to be treated fairly as all other units[.]"[76] If Mr. Fennell is referring to not allowing the J-Tier Unit access to religious or educational programs, he does not allege these Defendants' personal involvement in differential treatment. If Mr. Fennell is referring to the decision to lock inmates of the J-Tier Unit into their cells, he admits Deputy Warden Guidi placed the unit on lockdown, not these Defendants.[77]

Mr. Fennell accuses each state actor individually of violating his equal protection right, but he cannot state a claim with legal conclusions.[78] Mr. Fennell also fails to state a claim against Northampton County Prison because he does not allege facts showing a policy, custom, or recurring practice.

Mr. Fennell fails to state a claim for equal protection. We dismiss Mr. Fennell's Fourteenth Amendment claims against Captain Collins, Lieutenant Rinker, and Officer Santiago with leave to amend his complaint to adequately state a claim if he can do so under Federal Rule of Civil Procedure 11. We dismiss claims against Northampton County Prison with prejudice.

**F. Mr. Fennell fails to state an Eighth Amendment claim for cruel and unusual punishment.**

Mr. Fennell alleges two violations of his Eighth Amendment rights. He alleges Northampton County Prison subjected him to "cruel and unusual punishment" by subjecting him to unconstitutional prison conditions.[79] Mr. Fennell also alleges Captain Collins and Officer Baker subjected him to "cruel and unusual punishment" by verbally harassing and threatening him.[80]

While Mr. Fennell alleges Eighth Amendment claims, we analyze Eighth Amendment claims of a pretrial detainee under the Fourteenth Amendment. Mr. Fennell alleges his status as a pretrial detainee at Northampton County Prison.[81] "Our precedent is clear that while the detention of sentenced inmates is governed by the Eighth Amendment, the treatment of pretrial detainees is governed by the Due Process Clause."[82] A pretrial detainee's claims for unconstitutional prison conditions "are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment."[83] The Fourteenth Amendment guarantees Mr. Fennell protections at least as great as those guaranteed by the Eighth Amendment. To state a claim under the Eighth Amendment, Mr. Fennell must allege state actors "were deliberately indifferent to a substantial risk of serious harm.[84]

But as a pretrial detainee, the Fourteenth Amendment guarantees Mr. Fennell certain protections, including under the Due Process Clause requiring a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law."[85] Our Court of Appeals explained conditions amount to "punishment" when "there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."[86]

1. **We dismiss Mr. Fennell's claim against Northampton County Prison for unconstitutional conditions of confinement.**

Mr. Fennell alleges Northampton County Prison violated his Eighth Amendment rights by subjecting him to unconstitutional prison conditions.[87]

"If a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon [pretrial detainees.]"[88] Our Court of

Appeals has "distilled the Supreme Court's teachings in *Bell* into a two-part test. We must ask, first whether any legitimate purposes are served by these conditions, and second whether these conditions are rationally related to these purposes."[89] The Fourteenth Amendment standard of unconstitutional punishment contains both an objective and subjective component.[90] The objective component requires the inmate to show he has been subjected to genuine deprivation and hardship over an extended period of time, and the subjective component requires a state actor to have acted with a "sufficiently culpable state of mind."[91]

Mr. Fennell alleges Northampton County Prison punished him from January 29 to February 1, 2019 by only allowing him three hours out of his cell a day; delaying commissary; restricting access to the law library, educational programs, and religious services; forcing him to take cold showers in a moldy stall; and, removing ventilating fans from the J-Tier Unit.[92]

Mr. Fennell fails to allege a state actor's personal involvement in imposing these conditions.[93] Nor does he identify who decided to impose these conditions. He also fails to allege a policy or custom causing the alleged unconstitutional conditions.

Mr. Fennell fails to state a claim for unconstitutional conditions of confinement. We dismiss Mr. Fennell's Fourteenth Amendment claim against Northampton County Prison with prejudice.

### 2. We dismiss Mr. Fennell's claims against Captain Collins and Officer Baker for verbally harassing and threatening him without prejudice.

Mr. Fennell alleges Captain Collins and Officer Baker violated his Eighth Amendment right to be free from "cruel and unusual punishment" by verbally harassing and threatening to punish him.[94] Mr. Fennell argues these threats inflicted emotional distress and "mental injury."[95]

The Eighth Amendment's proscription of cruel and unusual punishment prohibits the wanton and unnecessary infliction of pain upon persons in custody.[96] But verbal harassment or threats do not violate either the Eighth Amendment or the Fourteenth Amendment.[97]

Mr. Fennell alleges on January 1, 2019, Officer Baker "verbally assaulted and threatened" the inmates of the J-Tier Unit by threatening to send inmates to "the Hole."[98] On February 5, 2019, Captain Collins, while yelling at inmates of the J-Tier Unit, approached Mr. Fennell and said "If you ask me another question, Imma send your little smart ass to E-Tier. Go ahead and try me you little mother****er. I ain't scared of no lawsuit. Sue me all you want…"[99]

Mr. Fennell's claim fails because he cannot state a claim for cruel and unusual punishment under either the Eighth Amendment or the Fourteenth Amendment by alleging only verbal harassment or threats.

Mr. Fennell fails to state a claim for cruel and unusual punishment. We dismiss Mr. Fennell's Fourteenth Amendment claim against Captain Collins and Officer Baker for cruel and unusual punishment with leave to amend his complaint to adequately state a claim.

**G. We dismiss Mr. Fennell's Ninth Amendment claim against Captain Collins and Officer Baker.**

Mr. Fennell alleges Captain Collins and Officer Baker violated his Ninth Amendment right by making disparaging comments.[100]

The Ninth Amendment provides "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." [101] The Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law, and does not independently secure a constitutional right for purposes of pursing a civil rights claim."[102]

Mr. Fennell's claim is duplicative of his claims under the Eighth Amendment. The Ninth Amendment does not secure Mr. Fennell an independent constitutional claim. Since his Eighth Amendment claims fail, his Ninth Amendment claims fail as well.

Mr. Fennell cannot state a claim under the Ninth Amendment. We dismiss Mr. Fennell's Ninth Amendment claim against Captain Collins with leave to amend his complaint to adequately state a claim.

### H. We dismiss Mr. Fennell's Thirteenth Amendment claim for involuntary servitude against Captain Collins.

Mr. Fennell alleges Captain Collins violated his Thirteenth Amendment right to be free from involuntary servitude "by telling [the] unit to stop asking questions[.]"[103]

The Thirteenth Amendment provides "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States[.]"[104] The Supreme Court explained:

> "The primary purpose of the [Thirteenth] Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results."[105]

Our Court of Appeals explained "in every case in which [the Supreme Court] has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction."[106] A claim under the Thirteenth Amendment must include allegations of forced labor.[107]

Mr. Fennell does not allege Captain Collins compelled him to work against his will. Mr. Fennell alleges an order to not ask questions amounts to forced labor. But we find no authority supporting his argument.

Mr. Fennell fails to state a Thirteenth Amendment claim. We dismiss Mr. Fennell's Thirteenth Amendment claim against Captain Collins with leave to amend his complaint to adequately state a claim.

### I. We dismiss Mr. Fennell's retaliation claims against Captain Collins, Lieutenant Hoffman, Lieutenant Rinker, and Officer Santiago.[108]

Mr. Fennell alleges Captain Collins, Lieutenant Hoffman, Lieutenant Rinker, and Officer Santiago retaliated against him for "attempting to exercise [his] rights" and for filing lawsuits against Captain Collins and Lieutenant Rinker.[109] Defendants argue Mr. Fennell did not suffer an adverse action.[110]

To state a claim for retaliation, Mr. Fennell "must allege: (1) he was engaged in constitutionally protected conduct, (2) he suffered some 'adverse action' at the hands of the prison officials; and (3) his constitutionally protected conduct was 'a substantial or motivating factor in the decision to take that action.'"[111] An adverse action is one which is "sufficient to deter a person of ordinary firmness from exercising his" constitutional rights.[112] The filing of a lawsuit is protected conduct falling within the protection of the First Amendment.[113] Our Court of Appeals held verbal threats and gestures from correctional officers are not sufficiently adverse to support a claim in the prison context.[114]

Mr. Fennell alleges Captain Collins retaliated by saying "I ain't scared of no lawsuit" and "go ahead and try and sue."[115] Captain Collins and Officer Santiago threatened to put inmates of the J-Tier Unit in solitary confinement in response to exercising their rights.[116] Mr. Fennell also alleges Lieutenant Rinker told him to "go ahead and try and sue us."[117]

Filing lawsuits is protected activity, but Mr. Fennell does not allege these Defendants took an adverse action in response to his lawsuits.[118] Words do not constitute adverse action to state a First Amendment retaliation claim.[119]

Mr. Fennell fails to state a claim for retaliation. We dismiss Mr. Fennell's retaliation claim against Captain Collins, Lieutenant Rinker, and Officer Santiago with leave to amend his complaint to adequately state a claim.

### J. Mr. Fennell's fails to state conspiracy claims against Deputy Warden Guidi, Director Kostura, Captain Collins, Lieutenant Chlebowski, Lieutenant Warning, Lieutenant Rinker, Lieutenant Hoffman, and Officer Santiago.

Mr. Fennell alleges two separate conspiracies: (1) against Captain Collins, Lieutenant Chlebowski, and Lieutenant Warning for harassing the J-Tier Unit; and, (2) against Captain Collins, Lieutenant Rinker, Lieutenant Hoffman, and Officer Santiago for conspiring to violate his civil rights.[120] Mr. Fennell also claims Deputy Warden Guidi and Director Kostura failed to prevent a conspiracy. [121] Defendants argue Mr. Fennell's claims fail because the state actors did not deprive him of a constitutional right.[122]

### 1. We dismiss Mr. Fennell's conspiracy claim against Captain Collins, Lieutenant Chlewbowski and Lieutenant Warning for harassing and alarming the J-Tier Unit.

Mr. Fennell alleges Lieutenant Chlewbowski and Lieutenant Warning conspired with Captain Collins to "harass and alarm the unit."[123]

To state a claim for conspiracy to violate civil rights, Mr. Fennell must allege: "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[124] Mr. Fennell must also allege facts showing an "agreement or meeting of the minds" to violate his constitutional rights.[125]

Mr. Fennell alleges on February 5, 2019, Lieutenant Chlewbowski and Lieutenant Warning witnessed the harassment from Captain Collins, and then conspired with Captain Collins to "harass and alarm the Unit."[126]

Mr. Fennell fails to state a claim for conspiracy to violate his constitutional rights because verbal threats and harassment do not violate his constitutional rights.[127] Mr. Fennell also does not allege facts showing an "agreement or meeting of the minds" among Defendants.

Mr. Fennell fails to state a claim for conspiracy to violate his constitutional rights. We dismiss Mr. Fennell's claim for conspiracy against Captain Collins, Lieutenant Chewblowski, and Lieutenant Warning with leave to amend his complaint to adequately state a claim.

### 2. We dismiss Mr. Fennell's conspiracy claim against Captain Collins, Lieutenant Rinker, Lieutenant Hoffman, and Officer Santiago to retaliate against him.

Mr. Fennell separately alleges Captain Collins, Lieutenant Rinker, Lieutenant Hoffman and Officer Santiago conspired to keep the J-Tier Unit under lockdown because of Mr. Fennell's lawsuits.[128] He alleges on February 5, 2019, Captain Collins said "Keep writing letters. You'll never get off lockdown . . . . [G]o ahead and try and sue, security overrides the law. I'm the law."[129] Later the same day, Lieutenant Rinker told Mr. Fennell "You heard what Collins said to you, you're locked down."[130] Lieutenant Rinker then laughed and said "Just sue us."[131] During the lock down period, Officer Santiago yelled profanities at the inmates, and threatened to send them to solitary confinement.[132] On February 6, 2019, Lieutenant Hoffman approached Mr. Fennell and told him:

> The jail has received numerous letters and request slips about your opinions on the status of the unit and we all gave you the exact same answer. It is not grievable and this is your direct order to stop asking about this issue or you will receive a write up for harassment and be sent to the 'Hole.'[133]

Mr. Fennell fails to state a claim for conspiracy against these state actors. He does not allege facts showing an agreement or a "meeting of the minds." He does not allege an understanding, or relationship of some kind amongst these Defendants regarding the decision to keep the J-Tier Unit under lockdown, or to retaliate against Mr. Fennell. It is unclear whether

Officer Santiago knew of Mr. Fennell's pending lawsuits, or wished to retaliate against him. Mr. Fennell fails to allege these Defendants determine the status of the J-Tier Unit. Mr. Fennell admits Lieutenant Henninger told him Deputy Warden Guidi decided to lock down the unit.[134]

Mr. Fennell fails to state a conspiracy claim. We dismiss Mr. Fennell's claim for conspiracy against Captain Collins, Lieutenant Hoffman, Lieutenant Rinker, and Officer Santiago with leave to amend his complaint to adequately plead a conspiracy claim against these Defendants.

### 3. We dismiss Mr. Fennell's under § 1986 claim for failure to prevent a conspiracy against Deputy Warden Guidi, Director Kostura, and Captain Collins.

Mr. Fennell alleges Deputy Warden Guidi and Director Kostura failed to prevent a conspiracy by ignoring letters J-Tier inmates sent them grieving the decision to put the Unit under lockdown.[135] He alleges Deputy Warden Guidi and Director Kostura had the power to prevent the constitutional violation but conspired by opting not to prevent a violation.

To state a claim for failure to intervene to prevent a conspiracy to interfere with civil rights, Mr. Fennell must allege: "(1) the defendant had actual knowledge of a conspiracy to interfere with civil rights; (2) the defendant had the power to prevent or aid in preventing the commission of the conspiracy; (3) the defendant neglected or refused to prevent the conspiracy; and (4) a wrongful act was committed."[136] "The success of a [S]ection 1986 claim is contingent upon the existence of a viable [S]ection 1985 claim."[137] To state a claim under Section 1985(3), Mr. Fennell "must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the united states."[138]

Mr. Fennell alleges Northampton County Prison, Captain Collins, Lieutenant Rinker, and Officer Santiago violated his Fourteenth Amendment equal protection rights.[139] But Mr. Fennell's equal protection claim fails because he does not allege different treatment from similarly situated maximum security inmates. Without an equal protection claim, Mr. Fennell cannot state a claim under Section 1985.

Even assuming Mr. Fennell states an equal protection claim, he fails to state a Section 1985(3) claim because he does not allege a conspiracy to discriminate. Mr. Fennell fails to allege a "meeting of the minds" among the state actors to violate his right to equal protection.

As he fails to state a claim under Section 1985, Mr. Fennell fails to state a claim under Section 1986. We dismiss Mr. Fennell's claim for failure to prevent a conspiracy against Deputy Warden Guidi, Director Kostura, and Captain Collins with leave to amend his complaint to adequately state a claim if he can do so under Federal Rule of Civil Procedure 11.

## III. Conclusion.

In an accompanying Order, we dismiss the claims in Mr. Fennell's Complaint against Director Kostura, Deputy Warden Guidi, Captain Collins, Lieutenant Cruz, Lieutenant Rinker, Lieutenant Chlebowski, Lieutenant Hoffman, Lieutenant Henninger, Lieutenant Warning, Officer Baker, and Officer Santiago without prejudice. We grant Mr. Fennell leave to file an amended complaint to adequately state a claim. We dismiss all claims against Northampton County Prison with prejudice.

---

[1] ECF Doc. No. 2-3, at 1.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.* at 2.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 2-3.

[9] *Id.* at 3.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.* at 4.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 7.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 9.

[29] *Id.*

[30] *Id.*

[31] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 657, 679).

[32] *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

[33] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[34] *Id.* (quoting *Rode*, 845 F.2d at 1207).

[35] *Id.* (quoting *Rode*, 845 F.2d at 1207).

[36] *Pennavaria v. Walton*, No. 10-0415, 2010 WL 2650413, at *4 (W.D. Pa. June 30, 2010) (citing *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988)) ("[O]fficial capacity actions represent another way to sue the municipality of which the officer is an agent.").

[37] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978).

[38] *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-91 (1989)).

[39] *Schwartz v. Cty. of Montgomery*, 823 F. Supp. 296, 300 (E.D. Pa. 1993) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

[40] *Monell*, 436 U.S. at 691.

[41] While not argued, Mr. Fennell's claims against Northampton County Prison fail as a prison is not a "person" under § 1983. *See Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (dismissing § 1983 claims against Curran-Fromhold Correctional Facility). Mr. Fennell fails to state a claim against the Prison assuming he intends to sue Northampton County under a municipality theory of liability. We dismiss claims against Northampton County Prison with prejudice.

[42] ECF Doc. No. 2-3, at 3.

[43] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey,* 518 U.S. 343, 346 (1996)).

[44] *Lewis,* 518 U.S. at 354-55.

[45] *Monroe,* 536 F.3d at 205 (citing *Christopher v. Hardbury*, 536 U.S. 403, 415 (2002)).

[46] ECF Doc. No. 2-3, at 3.

[47] *Id.*

[48] ECF Doc. No. 25, (Brief in Support of Defendants' Motion to Dismiss Plaintiff's Complaint), at 11.

[49] *Bell v. Wolfish,* 441 U.S. 520 (1979).

[50] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

[51] *Santana v. Aviles*, No. 11-2611, 2011 WL 6002260, at *5 (D.N.J. Nov. 30, 2011) (citing *Sutton v. Rasheed*, 323 F.3d 236, 250 (3d Cir. 2003)).

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] ECF Doc. No. 2-3, at 3.

[56] *Id.*

[57] ECF Doc. No. 2-3, at 3; *Santana*, 2011 WL 6002260, at *5.

[58] ECF Doc. No. 2-3, at 2.

[59] U.S. Const. amend IV.

[60] *See Katz v. United States*, 389 U.S. 347 (1967).

[61] *Ostrander v. Horn*, 145 F. Supp. 2d 614, 619-20 (M.D. Pa. 2001) (citing *Hudson v. Palmer*, 468 U.S. 517, 529 (1984)).

[62] ECF Doc. No. 2-3, at 2-3.

[63] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[64] *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

[65] *Henderson v. Kerns-Barr*, 313 F. App'x 451, 452 (3d Cir. 2008) (citing *Sandin*, 515 U.S. at 484).

[66] ECF Doc. No. 2-3, at 7-9.

[67] *Rode*, 845 F.2d at 1207.

[68] ECF Doc. No. 2-3, at 4.

[69] *Monell*, 436 U.S. at 691.

[70] ECF Doc. No. 2-3, at 2-3.

[71] *Id.* at 8.

[72] ECF Doc. No. 25, at 13.

[73] U.S. Const. amend. XIV, § 1.

[74] *Hennis v. Varner*, No. 12-646, 2014 WL 1317556, at *9 (W.D. Pa. 2014) (citing *Phillips v. County of Allegheny*, 515, F.3d 224, 243 (3d Cir. 2008)).

[75] ECF Doc. No. 2-3, at 2-3.

[76] *Id.* at 6.

[77] *Id.* at 4.

[78] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) ("[A]llegations . . . being merely conclusory, are not entitled to the presumption of truth.").

[79] ECF Doc. No. 2-3, at 3.

[80] *Id.* at 2, 6.

[81] ECF Doc. No. 2-1, at 16.

[82] *Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017) (citing *Bell*, 441 U.S. at 551).

[83] *Edwards v. Northampton Cty.,* No. 12-5323, 2016 WL 7654661, at *4 (E.D. Pa. Apr. 29, 2016), *aff'd*, 663 F. App'x 132 (3d Cir. 2016) (citing *Keller v. Cty. Of Bucks,* F. App'x 201, 205 (3d Cir. 2006)).

[84] *Johnson v. Criminal Justice Center,* No. 19-1490, 2019 WL 17547553, at *2 (E.D. Pa. Apr. 18, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).

[85] *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012).

[86] *Id.* (quoting *Stevenson v. Carroll,* 495 F.3d 62, 68 (3d. Cir. 2007)).

[87] ECF Doc. No. 2-3, at 3.

[88] *Santana*, 2011 WL 6002260, at *3 (quoting *Bell,* 441 U.S. at 539).

[89] *Id.* at 4 (citing *Hubbard v. Taylor*, 538 F. 3d 229, 232 (3d Cir. 2008)).

[90] *Id.*

[91] *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)).

[92] ECF Doc. No. 2-3, at 3.

[93] *Evancho*, 423 F.3d at 353.

[94] ECF Doc. No. 2-3, at 2, 6.

[95] *Id.* at 6.

[96] *See Estelle v. Gamble*, 429 U.S. 97 (1976).

[97] *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012); *Young v. Medden*, No. 03-5432, 2006 WL 456274, at *22 (E.D. Pa. Feb. 23, 2006) ("Numerous courts in this district have held that verbal harassment or threats, standing alone, do not state a constitutional violation."); *Quiero v. Muniz*, No. 14-225, 2015 WL 13738994, at *5 (M.D. Pa. Aug. 3, 2015) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.").

[98] ECF Doc. No. 2-3, at 2.

[99] *Id.* at 5.

[100] *Id.* at 2, 6.

[101] U.S. Const. amend. IX.

[102] *Basile v. Elizabethtown Area Sch. Dist.*, 61 F. Supp. 2d 392, 403 (E.D. Pa. 1999); *see also Hill v. Bogan*, No. 18-1605, 2018 WL 2445683, at *3 (E.D. Pa. May 31, 2018) ("Courts have generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison conditions[.]").

[103] ECF Doc. No. 2-3, at 6.

[104] U.S. Const. amend XIII.

[105] *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (quoting *Butler v. Perry*, 240 U.S. 328, 331 (1916)).

[106] *Burrell v. Loungo*, 750 F. App'x 149, 159 (3d Cir. 2018) (quoting *Koziminski,* 487 U.S. at 943).

[107] *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 806 (E.D. Pa. 2004) (citing *Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 999 (3d Cir. 1993)).

[108] Mr. Fennell brings his retaliation claims under 42 U.S.C. § 1997d and 42 U.S.C. § 2000(a)(3). We find no authority providing a private cause of action under § 1997d. *See Chruby v. Kowaleski*, No. 11-225, 2012 WL 12875987, at *8 (W.D. Pa. June 5, 2012), *subsequently aff'd*, 534 F. App'x 156 (3d Cir. 2013) ("Although the Third Circuit has not addressed the issue, it appears that each court that has considered whether § 1997d grants a private right of action for an individual has found that it does not."). We will instead construe his Complaint as alleging a First Amendment retaliation claim. Section 2000(a) concerns discrimination or segregation in places of public accommodation. This statute does not apply here.

[109] ECF Doc. No. 2-3, at 6-8.

[110] ECF Doc. No. 25, at 18.

[111] *Bistrian v. Levi*, 696 F.3d 352, 356 (3d Cir. 2012) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)).

[112] *Rauser*, 241 F.3d at 333.

[113] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

[114] *Dunbar*, 487 F. App'x at 723.

[115] ECF Doc. No. 2-3, at 5.

[116] *Id.* at 6, 8.

[117] *Id.* at 7.

[118] *Mitchell*, 318 F.3d at 530.

[119] *Dunbar*, 487 F. App'x at 721.

[120] ECF Doc. No. 2-3, at 2-3, 5, 7-9.

[121] *Id.* at 3-4.

[122] ECF Doc. No. 25, at 20-21.

[123] ECF Doc. No. 2-3, at 5.

[124] *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009).

[125] *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014).

[126] ECF Doc. No. 2-3, at 5.

[127] *Dunbar*, 487 F. App'x at 723.

[128] ECF Doc. No. 2-3, at 6, 8-9.

[129] *Id.* at 5-6.

[130] *Id.* at 7.

[131] *Id.*

[132] *Id.* at 8.

[133] *Id.* at 10.

[134] *Id.* at 4.

[135] *Id.* at 3-4.

[136] *Rosembert*, 14 F. Supp. 3d at 647.

[137] *Id.*

[138] *Id.* (citing *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997)).

[139] ECF Doc. No. 2-3, at 2-3, 7, 9.